UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


RICHARD K. NIEMI, and MARK NIEMI,
d/b/a RICHARD K. NIEMI DESIGN AND
ENGINEERING SERVICES, and RKN
TECHNOLOGY, L.L.C.,

      Plaintiffs,

v.

AMERICAN AXLE MANUFACTURING
& HOLDING INC., successor corporation to          Case No. 05-74210
AMERICAN AXLE &
MANUFACTURING OF MICHIGAN, a                     Honorable Patrick J. Duggan
defunct corporation, AMERICAN AXLE &
MANUFACTURING, INC.,
SPRINGFIELD TOOL & DIE, INC.,
successor corporation to NEWCO OF
DUNCAN, INC., a defunct corporation, and
JAMES ONYSKI, an agent, employee of
AMERICAN AXLE &
MANUFACTURING, INC., jointly and
severally,

      Defendants.

_____/

## OPINION AND ORDER

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on March 31, 2008.

    PRESENT:      THE HONORABLE PATRICK J. DUGGAN
                    U.S. DISTRICT COURT JUDGE

On November 2, 2005, Plaintiffs[1] filed this copyright infringement action against

Defendants.[2] Plaintiffs' First Amended Complaint asserts a count for copyright

infringement and a count for contributory copyright infringement. Presently before this

Court are following motions: (1) the AAM Defendants' Motion for Summary Judgment

as to Claims of RKN Technology, LLC; (2) the AAM Defendants' Motion for Partial

Summary Judgment on Statute of Limitations as to Plaintiffs' Claims of Copyright

Infringement regarding Second GMT 360 Stabilizer Bender; (3) the AAM Defendants'

Motion for Summary Judgment as to Count I for Direct Copyright Infringement and

Onyski's Motion for Summary Judgment as to Count II for Contributory Copyright

Infringement; (4) the AAM Defendants' Motion for Partial Summary Judgment as to

Issues Barred by Collateral Estoppel; and (5) the AAM Defendants' Motion for Partial

Summary Judgment Holding that Plaintiffs' Publication of Drawings Precludes a

Presumption of Validity in the Copyright Registration and Prevents an Award of

Statutory Damages or Attorney Fees. Springfield has joined the motions listed as (1), (2),

and (5). The Court held a hearing on the AAM Defendants' motions on December 20,

2007.

---

[1]Mark Niemi, a former Plaintiff, was dismissed pursuant to the Court's February 28, 2007 Opinion and Order. (*See* Doc. No. 156).

[2]For ease of reference the Court will refer to the following Defendants collectively as the "AAM Defendants": American Axle Manufacturing & Holding, Inc., American Axle Manufacturing, Inc., and James Onyski. When the Court collectively refers to American Axle Manufacturing & Holding Inc. and American Axle Manufacturing, Inc. it will refer to them as "AAM" or "American Axle." The Court will refer to James Onyski individually as "Onyski." Finally, the Court will refer to Defendant Springfield Tool & Die, Inc. as "Springfield".

# I.   <u>General Factual Background</u>[3]

AAM manufactures automotive stabilizer bars which are used in automobile suspension systems.  AAM contracted with Springfield to build the machines used to manufacture stabilizer bars, which are known as stabilizer benders.  Stabilizer benders are vehicle platform specific, and the stabilizer benders at issue in this case were built for the following vehicle platforms: the GMT 800, the GMT 360, the GMT 360 mid-cycle enhancement ("GMT 360 MCE"), and the GMT 900.  Springfield sub-contracted with Plaintiffs for the preparation of technical drawings used to build the stabilizer benders.

Richard Niemi created a number of drawings for stabilizer benders from 1996 to 2000.  On September 29, 2005, the U.S. Copyright Office issued Richard Niemi a copyright registration for the drawings.  Prior to the issuance of the copyright registration, Richard Niemi had granted RKN Technology, LLC ("RKN"), the business formed by Richard Niemi and his son Mark Niemi, the right to sub-license others.  Plaintiffs allege that they provided the drawings to Defendants "for the sole purpose of making a single machine to produce stabilizer bars for the GMT 360 and a single machine to produce stabilizer bars for the GMT 800."  (First Am. Compl. ¶ 12.)

More specifically, Plaintiffs allege that the parties reached an agreement where Plaintiffs would provide Defendants with the technical drawings so that one machine could be built and tested.  Then, when Defendants felt confident that the machine, as depicted in Plaintiffs' drawings, would work, Defendants would file a patent on behalf of

---

[3]When necessary, the Court will supplement this General Factual Background as it addresses each of the AAM Defendants' motions.

Plaintiffs, pay a reasonable royalty to Plaintiffs, and engage Plaintiffs to design any and all additional machines.

Plaintiffs argue that Defendants infringed on their copyrighted drawings by creating drawings for subsequent stabilizer benders that are substantially similar to Plaintiffs' copyrighted drawings. Plaintiffs' legal expert, Eugene Friedman, describes the alleged infringement in his Second Supplemental Expert Report in the following manner:

> Examples of American Axle's infringement of the Niemi copyright include: copies of the GMT 800 Drawings made for the second GMT 800 Bender; copies of GMT 800 Drawings for the first GMT 900 Bender; copies of the GMT 800 Drawings made for the second GMT 900 Bender; copies of the GMT 360 Bender Drawings made for the second GMT 360 Bender; Copies of the GMT 360 Bender Drawings for the first 360 MCE Bender; copies of the GMT 360 Bender Drawings made for the second 360 MCE Bender.

(Doc. No. 163, Ex. H, Second Supp. Rep of Eugene Friedman ("Friedman Rep.") at 4.) Plaintiffs' First Amended Complaint contains two separate counts. In Count I, Plaintiffs assert a claim for direct copyright infringement against all Defendants. In Count II, Plaintiffs assert a claim for contributory copyright infringement against the AAM Defendants only.

## II.    Standard of Review

This Court will grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). No genuine issue of material fact exists for trial unless, by viewing the evidence in a light most favorable to the nonmoving party, a reasonable jury could return

a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). The moving party bears the burden of informing this Court of the basis for its motion and identifying those portions of the record that establish the absence of a material issue of fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986).

Once the moving party has met its burden, Rule 56(e)(2) requires the nonmoving party to look beyond the pleadings and designate specific facts showing that a genuine issue exists for trial. FED. R. CIV. P. 56(e)(2); *Celotex*, 477 U.S. at 322-24, 106 S. Ct. at 2552-53. It is not enough that the nonmoving party comes forward with the "mere existence of a scintilla of evidence . . . ," *Anderson*, 477 U.S. at 252, 106 S. Ct. at 2512, or some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986). Rather, the nonmoving party must present significant probative evidence in support of its opposition to the motion for summary judgment. *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993).

### III.  Defendants' Motion for Summary Judgment as to Claims of RKN

In their first motion, Defendants seek summary judgment as to the claims of RKN, claiming that RKN lacks standing to bring suit for copyright infringement.

At the hearing held on December 20, 2007, the parties agreed that the Defendants' motion for summary judgment as to the claims of RKN should be granted. (*See* 12/20/07 Tr. at 48.) Therefore, for the reasons stated on the record at the December 20, 2007 hearing, the Court will grant Defendants' Motion for Summary Judgment as to the Claims

of RKN.  RKN will therefore be dismissed from this action.

## IV.  Defendants' Motion for Partial Summary Judgment on Statute of Limitations as to Plaintiffs' Claims of Copyright Infringement Regarding Second GMT 360 Stabilizer Bender

In their second motion, Defendants contend that they are entitled to "partial summary judgment as to the claims of Plaintiffs' Complaint related to alleged copyright infringement based on the alleged build of a second GMT 360 stabilizer bender" because these claims are barred by the three-year limitations period in 17 U.S.C. § 507(b).  (AAM Dfts.' Mot. at 2.)  As stated above, the alleged acts of infringement in this case are based on "copies of the GMT 800 Drawings made for the second GMT 800 Bender; copies of GMT 800 Drawings for the first GMT 900 Bender; copies of the GMT 360 Bender Drawings made for the second GMT 360 Bender; Copies of the GMT 360 Bender Drawings for the first GMT 360 MCE Bender; copies of the GMT 360 Bender Drawings made for the second GMT 360 MCE Bender."  (Friedman Rep at 4, ¶ 3.)  The AAM Defendants' motion for partial summary judgment is directed only to the allegations of infringement based on "copies of the GMT 360 Bender Drawings for the second GMT 360 Bender."  (*Id.*)

### A.    Relevant Factual Background

On May 10, 1999, AAM ordered the first GMT 360 bender from Springfield. (AAM Dfts.' Mot. Ex. D.)  Springfield then contracted with RKN to design the first GMT 360 bender.  (*Id.* Ex. E.)  Almost two years later, on March 20, 2001, AAM ordered the second GMT 360 bender from Springfield.  Plaintiffs argue that the technical drawings they produced for the first GMT 360 bender were copied in order to build the second

GMT 360 bender.  (Friedman Rep. at 4, ¶ 3.)

Prior to the filing of this lawsuit, on September 29, 2003, Plaintiffs commenced an action in the Wayne County Circuit Court against Defendants asserting claims for breach of contract and misappropriation of trade secrets.  In their state court complaint, Plaintiffs alleged that representations were made by Defendants regarding the design work for the GMT 360 and GMT 800 benders.  (*Id.* Ex. B, Pls.' State Ct. Compl. ¶¶ 16, 27.)  Plaintiffs alleged "[t]hat these representations were determined by Plaintiffs to be false on or about May 30, 2002."  (*Id.* ¶ 27.)

In his deposition taken for the purposes of this case, Richard Niemi was asked about the May 30, 2002 date in his state court complaint.  His testimony was as follows:

> BY MR. MOUSTAKAS:
> Q.  – Deposition Exhibit 6, and I'm not going to ask you to review this document other than to turn to Page 10, Paragraph 27, and clearly all I'm interested in is the very last sentence which is as follows: These representations were determined by plaintiffs to be false on or about May 30th, 2002.  Have I read that correctly?
>
> A.  You have read it correctly.
>
> Q.  Thank you.  Sir, is it correct that prior to May 30th, 2002, based on this Complaint and your earlier testimony, you knew that Springfield was using your drawings to manufacture a second 800 and a second 360 bender?
>
>   MR. KYLE: Same objection.
>
> A.  I knew that they were doing a 360, okay.  I am not sure about the 800 at this point.
>
> BY MR. MOUSTAKAS:
> Q.  Based on the knowledge you had on the 360 and having had interface with Springfield and from time to time visiting

the American Axle facility, was it more probable than not that
you also knew about the 800 prior to this date?

>MR. KYLE: Objection, calls for speculation and also is
>beyond the scope permitted by the court's scheduling order
>for depositions, fact depositions.

BY MR. MOUSTAKAS:
Q. Go ahead, sir.

>A. It's possible. I wouldn't know the first or second 800 on
>the American Axle floor or on the Springfield floor, and I
>wasn't on Springfield's floor very often, I was down for the
>360. In fact, I'm not sure I ever saw an 800 in person. I've
>seen a picture of it, so it's possible, but I don't know.

(AAM Dfts.' Rep. Br. Ex. G, R. Niemi Dep. at 22-23.)

Plaintiffs commenced this action on November 2, 2005.

**B.     Applicable Law and Analysis**

A plaintiff must file a civil suit under the Copyright Act within "three years after the

claim accrued." 17 U.S.C. § 507(b). "A cause of action accrues when a plaintiff knows

of the infringement or is chargeable with such knowledge." *Bridgeport Music, Inc. v.

Diamond Time, Ltd.*, 371 F.3d 883, 889 (6th Cir. 2004)(citing *Role v. New World

Pictures, Ltd.*, 19 F.3d 479, 481 (9th Cir. 1994)). Moreover, "[b]ecause each act of

infringement is a distinct harm, the statute of limitations bars infringement claims that

accrued more than three years before suit was filed but does not preclude infringement

claims that accrued within the statutory period." *Id.* (citations omitted).

Defendants contend that Plaintiffs' state court complaint, as clarified by Richard

Niemi's deposition testimony, is an admission "that as of May 30, 2002, they 'knew' that

Springfield was allegedly 'using [Plaintiffs'] drawings to manufacture . . . a second 360

bender." (AAM Dfts.' Br. at 5 (quoting R. Niemi Dep. at 22).) Thus, argue Defendants, this alleged unauthorized use, which Plaintiffs contend consisted of copying their drawings for the first GMT 360 bender to build the second GMT 360 bender, was known by Plaintiffs three years before Plaintiffs filed the present action on November 2, 2005.

Plaintiffs respond by claiming that Defendants mischaracterize Richard Niemi's deposition testimony and that his testimony is at best vague or ambiguous. Plaintiffs also point to the affidavit of James Onyski, the deposition testimony of James Onyski, and the deposition testimony of Mark Niemi, in arguing that Defendants' motion should be denied.

Contrary to Plaintiffs' argument, this Court believes that it is clear from Richard Niemi's deposition testimony that he knew or should have known that "on or about May 30, 2002," Springfield was allegedly copying his drawings to design and build the second GMT 360 bender. Consequently, Plaintiffs' contention that Richard Niemi's depositon testimony is vague and ambiguous is unavailing.

Plaintiffs also rely on Onyski's affidavit and deposition testimony. In his affidavit, Onyski describes the process in which AAM obtains a stabilizer bender, including the submission of a quotation by a vendor, submission of a purchase order by AAM, and preparation of drawings for the particular stabilizer benders. (Doc. No. 162, AAM Dfts.' Mot. for Summ. Jdgmt. as to Count I and Onyski's Mot. for Summ. Jdgmt. as to Count II, Ex. A, Onyski Decl. ¶ 4 (filed under seal).) In describing the details of the process as it applied to the GMT 800 stabilizer bender, Onyski indicated that a revision letter was sent by AAM to Springfield "revising the initial Purchase Specification to reflect a redesign of

the GMT800 stabilizer bar shown in a new part print." (*Id.* ¶ 6 iii.) Plaintiffs also refer to Onyski's deposition testimony in which he purportedly testified that "stabilizer bender projects are sometimes cancelled and that happened respecting the GMT 800 bender." (Pls.' Resp. Br. at 3 (citing J. Onyski Dep. at 165-68[4]).) According to this evidence, Plaintiffs contend that there is a genuine issue of material fact as to whether Plaintiffs knew or should have known of Defendants' alleged infringement in building the second GMT 360 bender.

Plaintiffs' reference to Onyski's affidavit and deposition testimony creates nothing more than mere speculation that the process for the GMT 360 may have been cancelled or that any copying of the drawings for the first GMT 360 bender to design and build the second GMT 360 bender may have occurred after May 30, 2002. In his affidavit, Onyski states that the initial Purchase Specification for the GMT 800 bender was revised. Similarly, Onyski's deposition testimony only references the cancellation of the GMT 800 bender project. Neither Onyski's affidavit nor his deposition testimony deal with the second GMT 360 bender. Plaintiffs' speculation is insufficient to raise a genuine issue of material fact.

---

[4]Plaintiffs did not attach the relevant pages of Mr. Onyski's deposition to their response brief. Presumably, Plaintiffs are referring to the portions of Mr. Onyski's deposition that were attached as Exhibit 11 to their response brief (along with a host of other party and non-party deposition testimony) to AAM Defendants' Motion for Summary Judgment as to Count I for Direct Copyright Infringement and James Onyski's Motion for Summary Judgment as to Count II for Contributory Copyright Infringement. Plaintiffs, however, have only provided page 165 of Mr. Onyski's deposition transcript in Exhibit 11. Nonetheless, the Court will assume Plaintiffs' characterization of Mr. Onyski's deposition testimony is correct, because even if true, it does not establish a genuine issue of material fact for the purposes of Defendants' present motion.

Plaintiffs' reliance on Mark Niemi's deposition testimony is likewise unavailing, as it too does not mention the second GMT 360 bender or when Plaintiffs may have learned of the alleged infringement as it relates to the designing and building of the second GMT 360 bender. (*See* M. Niemi Dep. at 107.)

Based on the foregoing analysis, this Court concludes that there is no genuine issue of material fact that Plaintiffs knew or should have known about Defendants' alleged infringement as it relates to the second GMT 360 bender on May 30, 2002. Because this lawsuit was filed over three years after Plaintiffs' infringement claims as they relate to the second GMT 360 bender accrued, *see Bridgeport Music, Inc.*, 371 F.3d at 889, Defendants are entitled to partial summary judgment on statute of limitations grounds with respect to Plaintiffs' copyright infringement claims relating to the second GMT 360 bender.

**V.** **AAM Defendants' Motion for Summary Judgment as to Count I for Direct Copyright Infringement and Onyski's Motion for Summary Judgment as to Count II for Contributory Copyright Infringement Against**

In their third motion, the AAM Defendants seek summary judgment as to Count I for Direct Copyright Infringement. In addition, Onyski seeks summary judgment as to Count II for Contributory Copyright Infringement. The Court will deal with each of these arguments separately.

**A.** **AAM Defendants are Entitled to Summary Judgment as to Count I for Direct Copyright Infringement**

There are two types of liability for copyright infringement: direct and contributory. "Direct copyright infringement occurs when anyone 'violates any of the exclusive rights

of the copyright owner.'" *Bridgeport Music, Inc. v. WB Music Corp.*, 508 F.3d 394, 398 (6th Cir. 2007)(quoting 17 U.S.C. § 501(a)). "Subject to certain exceptions not applicable here, the owner of a copyright has the exclusive rights (1) to reproduce the copyrighted work; (2) to prepare derivative works; (3) to distribute copies; (4) to perform publicly a copyrighted work; and (5) to display publicly a copyrighted work." *Stromback v. New Line Cinema*, 384 F.3d 283, 293 (6th Cir. 2004)(citing 17 U.S.C. § 106). "A plaintiff may bring a claim against a person who infringes any of the plaintiff's exclusive rights in a copyright under § 106 by demonstrating two elements: '(1) ownership of a valid copyright; and (2) copying of constituent elements of the work that are original.'" *Id.* (quoting *Fiest Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361, 111 S. Ct. 1282, 1296 (1991)).

On the other hand, "[c]ontributory infringement occurs when one, with knowledge of the infringing activity, induces, causes, or materially contributes to the infringing conduct of another." *Bridgeport Music, Inc. v. Rhyme Syndicate Music*, 376 F.3d 615, 621 (6th Cir. 2004). Furthermore, "[a] defendant can be held vicariously liable if he enjoys a direct financial benefit from the infringing activity and has the right and ability to supervise the infringing activity." *Id.* (internal quotation marks and citation omitted).

In this case, there is no direct evidence of copying by the AAM Defendants. "[W]here there is no direct evidence of copying, a plaintiff may establish 'an inference of copying by showing (1) *access* to the allegedly-infringed work by the defendants(s) and (2) a *substantial similarity* between the two works at issue.'" *Kohus v. Mariol*, 328 F.3d 848, 853 (6th Cir. 2003)(emphasis in original)(quoting *Ellis v. Diffie*, 177 F.3d 503, 506

(6th Cir. 1999)).

In their motion, the AAM Defendants state that "Plaintiffs contend . . . that direct copyright infringement has occurred in three instances . . . (1) direct infringement via alleged copies made during the manufacture of stabilizer benders; (2) direct infringement via an alleged copy of a disk of GMT 800 drawings sent back to Springfield; and (3) direct infringement via exceeding an alleged license between American Axle and Plaintiffs." (AAM Dfts.' Br. at 6 (citing Pls.' answers to interrogatories and expert testimony).) Plaintiffs do not dispute the AAM Defendants' characterization of their direct copyright infringement claim. Rather, Plaintiffs contend that to succeed on their claim for direct copyright infringement against the AAM Defendants they need only provide circumstantial evidence of access and similarity of the drawings. The AAM Defendants contend that "[a]ccess and substantial similarity, however, do not establish copying unless the accused work was created by the accused defendant." (Dfts.' Br. at 6 n.2 (citations omitted).)

This Court agrees with the AAM Defendants and finds that to prove direct copyright infringement, using either direct or circumstantial evidence, Plaintiffs must prove that the allegedly substantial similar works at issue in this case were created by the AAM Defendants.

> [A] finding of direct copyright infringement requires some element of direct action or participation, for two primary reasons. First, the statute is cast in terms of *activities* which are reserved to copyright owners. 17 U.S.C. § 106. It follows that an infringer must *actually engage in* one of those activities in order to directly violate the statute. . . . Merely *encouraging* or *facilitating* those activities is not proscribed

by the statute.  Second, it is the area of contributory liability
which allows "the imposition of liability on certain parties
who have not themselves engaged in the infringing activity."
*Sony Corp. v. Universal Studios, Inc.*, 464 U.S. 417, 435, 104
S. Ct. 774, 785 [] (1984)(footnote omitted).  There would be
no reason to bifurcate copyright liability into the separate
categories of direct and contributory if any remote causal
connection to copyright infringement could be analyzed under
theories of direct infringement.

*Playboy Enters., Inc. v. Russ Hardenburgh, Inc.*, 982 F. Supp. 503, 512-13 (N.D. Ohio

1997)(emphasis added).  In the case at bar, Plaintiffs assert claims for direct and

contributory copyright infringement against the AAM Defendants.  Thus, Plaintiffs must

keep their theories separate, and in order to proceed to trial on their direct copyright

infringement claim against the AAM Defendants, Plaintiffs must point to evidence

showing that a genuine issue of material fact exists as to whether the AAM Defendants

actually engaged in an activity exclusively reserved to a copyright owner under 17 U.S.C.

§ 106, as opposed to merely inducing, causing, or materially contributing to the infringing

acts of another.

     1.  <u>Direct infringement via alleged copies made during manufacture of stabilizer
benders</u>

In their response brief, Plaintiffs argue and present evidence they claim establishes

that the drawings for the GMT 900 stabilizer bender are substantially similar to Richard

Niemi's copyrighted drawings for the GMT 800 stabilizer bender.  (Pls.' Resp. Br. 5-8.)

Plaintiffs argue that even the AAM Defendants' expert does not dispute the fact that the

allegedly infringing drawings of the GMT 900 stabilizer bender are substantially similar

to Richard Niemi's original drawings.  (Pls.' Resp. at 5 (citing Ex. 11, Ralph Hudson

Dep. at 93-98).)

The AAM Defendants have proffered evidence showing that they did not create the drawings Plaintiffs contend infringed their copyright. The AAM Defendants proffer the Declaration of Onyski. In his Declaration, Onyski states that, as the Senior Manufacturing Engineer for AAM, he is familiar with the process AAM uses to manufacture stabilizer benders and welders and the purchase of stabilizer benders and welders. (Dfts. Mot. Ex. A, Onyski Dec. ¶ 2.) Onyski states that when AAM purchases the stabilizer benders and welders it issues purchase orders "to a vendor, such as Springfield, for a particular machine." (*Id.* ¶ 3.) More specifically, Onyski states:

> A purchase order is the result of a bidding process whereby a vendor submits a quotation or bid to American Axle for the design and build of a machine such as a stabilizer bender or welder. In response to a purchase order for the design and build of a machine, the vendor designs, builds, and delivers the particular machine, with a set of drawings prepared by the vendor, to American Axle as specified in the purchase order. The vendor designs and prepares drawings for the particular machine to form, or weld, the particular stabilizer bar shown in a stabilizer bar part print provided to the vendor during the bidding process. . . .

(*Id.* ¶ 4.)[5] Based on Onyski's Declaration, it is the vendor, in this case Springfield, that builds, using (or copying) the drawings of another, for the stabilizer benders. Consequently, the AAM Defendants maintain that they cannot be held liable for direct copyright infringement.

_____

[5]In his Declaration, by way of example, Onyski describes and provides documentary evidence of the bidding process and purchase of the GMT 800 stabilizer bender. (*See id.* ¶ 6.)

Plaintiffs contend that Onyski's description of the standard procedure in which AAM obtains stabilizer benders is not what happened in this case. First, Plaintiffs argue that they "were directly involved with AAM as part of its 'Re-invention team.'" (Pls.' Resp. Br. at 9.) According to an October 12, 1998 memorandum from Ed Carter (an AAM representative) to "T. Delanoy," AAM "asked Rick Niemi of RKN design" to participate in a study of AAM's "stabilizer business to understand AAM's current level of competitiveness and what must be done to bring AAM to best in class status." (Pls.' Resp. Ex. 2.) Richard Niemi received this October 12, 1998 memorandum. (Pls.' Resp. Ex. 11, R. Niemi Dep. at 128.) Moreover, Richard Niemi had direct discussions with AAM personnel, including Onyski, about re-inventing the stabilizer bender. (*Id.* at 129, 152.)

While Plaintiffs maintain that this evidence suggests that something different than AAM's standard operating procedure, as outlined by Onyski, occurred in this case, they fail to proffer any evidence that the AAM Defendants created any of the allegedly infringing works at issue in this case. There is no evidence in the record indicating that the AAM Defendants manufactured the stabilizer benders at issue in this case. Because there is no evidence that the AAM Defendants manufactured stabilizer benders, it follows that the AAM Defendants did not actually engage in the direct infringement of the copyrighted technical drawings depicting the various stabilizer benders. Consequently, the AAM Defendants are entitled to summary judgment with respect to Plaintiffs' claim for direct copyright infringement based on the actual copying of the drawings.

2. <u>Direct infringement via an alleged copy of a disk of GMT 800 drawings sent</u>

back to Springfield

As stated above, Plaintiffs also maintain that the AAM Defendants must have copied their GMT 800 drawings by copying a compact disc ("CD") containing GMT 800 drawings. In 2005, AAM returned a GMT 800 stabilizer bender to Springfield so that it could be "redesigned and reworked." (AAM Dfts.' Mot. Ex. G, 2/7/05 Shipping Request.) When AAM returned the GMT 800 stabilizer bender to Springfield, it also returned a CD containing allegedly infringing drawings of the GMT 800 bender. Plaintiffs' proffered legal expert, Eugene Friedman, states in his report that "American Axle would not under any circumstances send its only CD of the GMT 800 drawings to Springfield without making an extra copy." (Dfts.' Mot. Ex. F, Friedman Rep. at 4.) The AAM Defendants contend that Mr. Friedman's statement is mere speculation and "is made without supporting reference to any document or evidence reflecting American Axle's actual practices and procedures." (AAM Dfts.' Br. at 7.) This Court agrees with the AAM Defendants.

The evidence in this record shows that AAM requires that vendors, such as Springfield, provide three sets of drawings before a design for a stabilizer bender is approved. (Onyski Dec. A. 12 at 3.) Therefore, Mr. Friedman's statement that AAM must have copied the drawings on the CD is mere speculation because American Axle's standard procedure is to obtain three copies of any drawings. Consequently, to the extent that Plaintiffs' claim for direct infringement against the AAM Defendants is based on the AAM Defendants alleged copying of the drawings of the GMT 800 stabilizer bender contained on the CD it returned to Springfield, such a claim is based on mere speculation

and the AAM Defendants are therefore entitled to summary judgment.

3. <u>Direct infringement via exceeding an alleged license between AAM and Plaintiffs</u>

Finally, Plaintiffs contend that the AAM Defendants engaged in direct copyright infringement when they used the drawings outside the scope of an alleged license between AAM and Plaintiffs.[6] (*See* AAM Dfts.' Mot. Ex. J, Friedman Dep. at 49-50.) This Court held in its July 24, 2005 Opinion and Order that "Plaintiffs' copyrights are not infringed by the use, use of copies, or use of derivatives of copies, of technical drawings to manufacture or use stabilizer benders, welders, or other machines as alleged in Plaintiffs' Complaint." (Doc. No. 83, 7/24/06 Op. & Or. at 8.) Consequently, Plaintiffs' contention that the AAM Defendants committed a direct act of copyright infringement when they allegedly "used" the copyrighted drawings outside the scope of an alleged license is unavailing to the extent that such "use" does not implicate one of the exclusive rights conferred by the Copyright Act. *Storage Tech. Corp. v. Custom Hardware Eng'g & Consulting, Inc.*, 421 F.3d 1307, 1315-16 (Fed. Cir. 2005)("To succeed in a copyright action[, as opposed to a breach of contract action,] 'the copying must be beyond the scope of a license possessed by the defendant,' and the source of the copyright owner's complaint must be grounded in a right protected by the Copyright Act, such as unlawful reproduction or distribution.")(citing 17 U.S.C. § 106)(internal citations omitted).

─────────────────────

[6]It is unclear from Mr. Friedman's deposition testimony whether he is referring to a license between Plaintiffs and the AAM Defendants or a license between Plaintiffs and Springfield. At one point, Mr. Friedman states that "for Springfield to make a copy of it, they are infringing the copyright directly by using the drawings beyond the scope of which they have a license for." (Friedman Dep. at 50.)

Furthermore, Mr. Friedman's deposition testimony fails to describe AAM's alleged "use," much less whether AAM's alleged "use" implicates one of the exclusive rights conferred by the Copyright Act. Therefore, even assuming that the alleged license exists and that the AAM Defendants "used" the drawings outside the scope of this alleged license, this does not create a genuine issue of material fact that the AAM Defendants engaged in an act of direct copyright infringement.

### B.     Onyski is Not Entitled to Summary Judgment as to Count II for Contributory Copyright Infringement

Onyski also seeks summary judgment on Count II of Plaintiffs' Complaint, which asserts a claim for contributory copyright infringement against the AAM Defendants. In their brief in support of their motion, the AAM Defendants argue that:

> There are no "profits" attributable to the alleged infringement *personally* allocable to Onyski. Onyski's inclusion as a Defendant does not alter the landscape of Plaintiffs' claim for relief. Rather, Onyski's inclusion as a Defendant is designed to harass and punish Onyski. Onyski's participation as a Defendant does nothing more than complicate issues for trial.

(AAM Dfts.' Br. at 10.)

Plaintiffs contend that the AAM Defendants' "argument is not supported by any legal basis or authority." (Pls.' Resp. at 1.) Moreover, in their response brief, Plaintiffs cite to evidence in the record showing that one of Onyski's responsibilities, while working as American Axle's Senior Manufacturing Engineer, included the approval of the final bender drawings. Some of the allegedly infringing drawings, approved by Onyski, included the name "Niemi" on the drawing. (Pls.' Resp. Ex. 11, R. Niemi Dep. at 140.)

As stated above, "[c]ontributory infringement occurs when one, with knowledge of the infringing activity, induces, causes, or materially contributes to the infringing conduct of another." *Bridgeport Music, Inc.*, 376 F.3d at 621. Stated anther way, "[a] plaintiff must . . . prove (1) that the defendant had knowledge of the infringing activity, and (2) that defendant's participation in the infringing activity was substantial." *Galiano v. Harrah's Operating Co., Inc.*, No. Civ.A. 00-0071, 2004 WL 1057552, at *12 (E.D. La. May 10, 2004)(citing *Gershwin Publ'g Corp. v. Columbia Artists Mngmt., Inc.*, 443 F.3d 1159, 1162 (2nd Cir. 1971)).

This Court believes that Plaintiff has pointed to evidence in the record establishing a genuine issue of material fact as to whether Onyski knew of Springfield's allegedly infringing activities and whether Onyski's participation in such activity was substantial. There is evidence in the record that shows that Onyski was involved in the approval process for the designing and building of the stabilizer benders that were built with the allegedly infringing drawings. At one point, Onyski approved the design of the stabilizer benders for the GMT 900, based on drawings that included the name "Niemi." Therefore, the AAM Defendants' motion for summary judgment as to Plaintiffs' claim for contributory copyright infringement against Onyski will be denied.

### C.    Conclusion

For the foregoing reasons, this Court will grant the AAM Defendants' motion for summary judgment as to Count I of Plaintiffs' First Amended Complaint. Therefore, Count I of Plaintiffs' First Amended Complaint will be dismissed as to the AAM Defendants. However, the Court will deny Onyski's  motion for summary judgment with

respect to Count II of Plaintiffs' First Amended Complaint.

## VI. The AAM Defendants' Motion for Partial Summary Judgment as to Issues Barred by Collateral Estoppel

In their fourth motion, the AAM Defendants seek partial summary judgment as to two issues they contend Plaintiffs are barred from raising in this case based on the doctrine of collateral estoppel. "Specifically, [AAM] Defendants move for summary judgment as to Plaintiffs' allegations of a contract with American Axle and allegations of restrictions on the use of Plaintiffs' alleged drawings." (AAM Dfts.' Mot. at 2.)

Prior to commencing this action, Plaintiffs brought an action against Defendants in the Wayne County Circuit Court. In their state court action, Plaintiffs asserted two claims: (1) breach of contract; and (2) misappropriation of trade secrets.

Plaintiffs contend that the AAM Defendants' motion should be denied because "the issues of fact necessary to a determination of the existence of an express or implied copyright license were never decided by the state court, which lacks jurisdiction over copyright issues pertaining to the exclusive rights of the copyright owner." (Pls.' Resp. at 2.) Plaintiffs also argue that they have not had a full and fair opportunity to litigate copyright issues because they arise under the Copyright Act and involve different elements of proof. Thus, Plaintiffs assert that collateral estoppel is inapplicable to any of their allegations in this case.

The Full Faith and Credit Act, 28 U.S.C. § 1738, requires a federal district court to "give to a state court judgment the same preclusive effect as would be given that under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch.*

*Dist. Bd. Educ.*, 465 U.S. 75, 81, 104 S. Ct. 892, 896 (1984); *Smith v. Hinchman and Grylls Assoc. v. Tassic*, 990 F.2d 256, 257 (6th Cir. 1993); *see also* U.S. Const. Art. IV, § 1. Under Michigan law, three elements must be satisfied for the doctrine of collateral estoppel or issue preclusion to apply: (1) "a question of fact essential to the judgment must have been actually litigated and determined by a valid and final judgment"; (2) "the same parties must have had a full [and fair] opportunity to litigate the issue"; and (3) "there must be mutuality of estoppel." *Monat v. State Farm Ins. Co.*, 469 Mich. 679, 683-84, 677 N.W.2d 843, 845-46 (2004)(quoting *Storey v. Meijer, Inc.*, 431 Mich. 368, 373 n.3, 429 N.W.2d 169, 171 n.3 (1988)). "The purposes of collateral estoppel are to shield litigants (and the judicial system) from the burden of re-litigation identical issues to avoid inconsistent results." *Gilbert v. Ferry*, 413 F.3d 578, 580 (6th Cir. 2005).

In the present action, Plaintiffs' First Amended Complaint contains the following allegations:

> 12. Plaintiff Richard K. Niemi created a vast number of drawings for stabilizer benders, welders and other machinery from 1996 to 2002 ("the drawings"). Plaintiff Richard Niemi received copyright registration ("the Copyright") for "the Drawings". Plaintiff Richard Niemi has granted a license under the copyright to RKN Technologies with a right to sub-license others. Operating under its license with Richard K. Niemi, RKN licensed Defendants to use the drawings for a limited purpose as hereinafter alleged. Plaintiffs [*sic*] Richard Niemi, by creating these drawings has a copyright in them. ("the Copyright"), he [*sic*] has received a copyright registration for the Copyright. Richard K. Niemi provided the drawings to Defendants for the sole purpose of making a single machine to produce stabilizer bars for the GMT 360 and a single machine to produce stabilizer bars for the GMT 800 ("the Machines") and to submit a patent application on Plaintiffs' behalf in the event the machines successfully ran

production.

.   .   .

 17.  On or about October 14, 1998, Plaintiffs agreed to grant
Defendant American Axle a limited license for use of
Plaintiffs' copyrighted engineering drawings for the purpose
of manufacturing a single stabilizer bender machine for the
GMT 800 platform and a single stabilizer bender machine for
the GMT 360 platform and submitting a patent application on
Plaintiffs' behalf.  The terms of the limited license were that
American Axle would be allowed to build he [sic] Machines
to determine if they would successfully manufacture stabilizer
bars and if so to submit a patent application on Plaintiffs'
behalf and compensate Plaintiffs for any future use of the
copyrighted drawings and/or the patented Machines.

(First. Am. Compl. ¶¶ 12, 17.)  Moreover, in his second supplemental report, Plaintiffs'

expert, Eugene Friedman, opined that if a licensee exceeds the scope of a copyright

license this can constitute copyright infringement.  Specifically, Mr. Friedman opines:

 3.  Agreement Can Limit A Party's Use of Intellectual
Property of Another, Products Incorporating that Intellectual
Property, and unrelated products

 The licensee and the copyright owner can agree to limit the
use of the copyrighted material in any way and if the licensee
goes outside of the parameters of the agreement this
constitutes copyright infringement.  Also the limitations can
involve agreed restrictions involving non-copyrighted
material.

(Friedman Rep. at 8.)  Mr. Friedman reiterated during his deposition that he is of the

opinion that "when you exceed the contractual parameters [of a copyright license], then

you're in a copyright infringement, even if you use the same drawings to make a second

machine."[7]  (AAM Dfts.' Mot. Ex. H, Friedman Dep. at 42.)  Moreover, Mr. Friedman testified that Richard Niemi, RKN, and American Axle had "an understanding and an agreement that they will use the drawings to build a single 800 machine," (*id.* at 43), and that American Axle is "infringing the copyright directly by using the drawings beyond the scope of which they have a license for."  (*Id.* at 50.)

The contractual allegations in Plaintiffs' state court action dealt with compensation for the use of Plaintiffs' designs, an agreement to terms of mutual exclusivity and confidentiality, and an agreement to file a patent application on Plaintiffs' behalf.  *Niemi v. Am. Axle Mfg.*, No. 269155, 2007 Mich. App. LEXIS 22, at *13 (Mich. Ct. App. Jan. 4, 2007).  The Michigan state courts granted summary judgment in AAM's favor on Plaintiffs' state court breach of contract claim because there was no evidence that Defendants accepted the terms of Plaintiffs' offer and there was no evidence allowing Plaintiffs to prevail on an implied contract or quasi-contractual theory.  *See id.* at *12-18.

This Court does not believe that Plaintiff's copyright infringement claims against Defendants are dependent on any issue actually litigated with respect to Plaintiff's state court breach of contract claim.  Moreover, although Plaintiffs do allege in their present complaint that they provided their drawings to Defendants for the purpose of submitting a patent application, these allegations are not relevant, much less necessary to prove, Plaintiffs' copyright infringement claims.  Therefore, the AAM Defendants' motion will

---

[7]*But see supra* pages 18-19 (explaining that "use" of a copyright beyond the scope of an alleged license or agreement does not constitute infringement unless such "use" implicates on of the exclusive rights conferred under the Copyright Act).

be denied to the extent that it seeks to preclude Plaintiffs from litigating what the AAM

Defendants construe as "Plaintiffs' allegations of a contract with American Axle."

The same is true with respect to what the AAM Defendants' have labeled Plaintiffs'

allegations on "restrictions of use." Plaintiffs' previous state court action also asserted a

claim for misappropriation of trade secrets. In affirming the trial court's denial of

Plaintiffs' misappropriation of trade secrets claim, the Michigan Court of Appeals

focused on the fact that Plaintiffs failed to make reasonable efforts to maintain the secrecy

of any information in their designs and drawings.[8] *Niemi*, 2007 Mich. App. LEXIS 22, at

*10-11. In this Court's opinion, the factual issues involved in the Michigan state courts'

determination that Plaintiffs failed to use reasonable efforts to maintain the secrecy of

their drawings are not necessary to prove Plaintiffs' copyright infringement claims.

Consequently, the AAM Defendants' motion will also be denied as to the allegations they

characterize as "restrictions on use."

**VII.** **Defendants' Motion for Partial Summary Judgment Holding that Plaintiffs' Publication of Drawings Precludes a Presumption of Validity in the Copyright Registration and Prevents an Award of Statutory Damages and Attorney Fees**

In their fifth motion, Defendants seek "an order holding that Plaintiffs' publication

_____

[8]"The first element a plaintiff alleging a misappropriation of trade secrets claim must prove is that the information at issue actually constitutes a 'trade secret.'" *Mikes Train House, Inc. v. Lionel, LLC*, 472 F.3d 398, 410 (6th Cir. 2006)(citing *Stromback v. New Line Cinema*, 384 F.3d 283, 302 (6th Cir. 2004)). "For information to constitute a trade secret under Michigan law, the information must (1) derive economic value from the fact that it is not known to others who could make use of it, and (2) be the subject of efforts that are reasonable under the circumstances to maintain its secrecy." *Id.* (citing MICH. COMP. LAWS § 445.1902(d)).

of drawings precludes a presumption of validity in the copyright registration, prevents an award of statutory damages and prevents an award of attorney's fees." (AAM Dfts.' Mot. at 2.) The AAM Defendants' motion, which is joined by Springfield, is based on two separate statutory provisions 17 U.S.C. § 410(c)[9] and 17 U.S.C. § 412.[10]

For § 410(c) and § 412(2) to be invoked, there must have been a "publication" of the copyrighted works. The Copyright Act defines "publication" in the following manner:

> Publication is the distribution of copies or phonorecords of a work **to the public by sale or other transfer of ownership, or by rental, lease, or lending.** The offering to distribute copies or phonorecords to a group of persons for purposes of further

---

[9]Section 410(c) of the Copyright Act provides:

> In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute *prima facie* evidence of the validity of the copyright and of the facts stated in the certificate. The evidentiary weight to be accorded the certificate of registration made thereafter shall be within the discretion of the court.

17 U.S.C. § 410(c).

[10]Section 412 of the Copyright Act provides in relevant part:
[N]o award of statutory damages or of attorney's fees, as provided by sections 504 and 505, shall be made for --
(1) any infringement of copyright in an unpublished work commenced before the effective date of its registration; or
(2) any infringement of a copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work.

17 U.S.C. § 412.

> distribution, public performance, or public display, constitutes
> publication.

17 U.S.C. § 101 (emphasis added). Plaintiffs and Defendants agree that "publication" as

defined in § 101 refers to a "general publication," as opposed to a "limited publication."

*See Telecomm, Inc. v. Siemens, Inc.*, 66 F. Supp. 2d 1306, 1322-23 (N.D. Ga. 1998). "A

limited publication requires **both** communication of the copyrighted work to a selected

group **and** a limited purpose. If either of these criteria is lacking a disclosure constitutes

a general publication." *RPM Mgmt. v. Apple*, 943 F. Supp. 837, 842 (S.D. Ohio

1996)(emphasis in original)(citing *White v. Kimmell*, 193 F.2d 744, 746-47 (9th Cir.

1952)). In this regard, the legislative history of § 101 states that "a work is 'published' if

one or more copies of phonorecords embodying it are distributed to the public – that is,

generally to persons under no explicit or implicit restrictions with respect to the

disclosure of its contents – without regard to the manner in which the copies or

phonorecords changed hands." H.R. REP. NO. 94-1476 at 138 (1976). Thus, a sale or

other transfer of ownership "to persons under no explicit or implicit restrictions with

respect to the disclosure of [the copyrighted work's] contents" is a "publication" for the

purposes of § 101.

Defendants argue that Plaintiffs sold the copyrighted drawings to Springfield

without express or implied restriction, and this constituted a "general publication." In so

arguing, the AAM Defendants rely on the following statement from the Michigan Court

of Appeals decision affirming the trial courts grant of summary judgment in favor of

Defendants on Plaintiffs' misappropriation of trade secrets claim: "Plaintiffs did not make

any concrete efforts to preserve the confidentiality of the designs provided to Defendants. They did not mark the documents as confidential, or require an express agreement of confidentiality from Springfield. ***Nor did they control what Springfield or AAM did with the documents while they had them in their possession.***" *Niemi*, 2007 Mich. App. LEXIS 22, at *10-11 (as emphasized by the AAM Dfts.).

This Court does not believe that Plaintiffs' sale of the drawings to Defendants amounted to a "general publication." Contrary to the AAM Defendants' assertion, the Michigan Court of Appeals did not decide conclusively that Plaintiffs sold the drawings to Defendants without any express or implied restriction. In fact, the Michigan Court of Appeals acknowledged that there was an implied agreement between Plaintiffs and Springfield to keep the drawings confidential. *See Niemi*, 2007 Mich. App. LEXIS 22, at *5 (stating that "the only 'effort' plaintiffs made to maintain confidentiality was their reliance on an implied agreement that Springfield and AAM would not release the information because they understood the proprietary value of it"). Moreover, there is evidence in the record showing that both AAM and Springfield acknowledged that the designs, as depicted in Plaintiffs' copyrighted drawings, should be kept confidential. (*See* M. Niemi Dep. 10/2/04 at 212 (referring to a September 28, 1998 design review where Plaintiffs "met with people from Springfield at [AAM] and discussed" the "need to keep [Plaintiffs' drawings] protected").[11]) Consequently, to the extent that the AAM

_____

[11]At the hearing and in their reply brief, the AAM Defendants cite evidence showing that Springfield was not present during an October 14, 1998 meeting with Plaintiffs, in which there was an alleged discussion about keeping Plaintiffs' drawings protected. (*See* AAM Dfts.' Reply Br. at 3-5 (citing Exhibits M and N attached thereto).)

Defendants' present motion for partial summary judgment is premised on the Plaintiffs' "publication" of the drawings, it will be denied.

Alternatively, the AAM Defendants contend that even if Plaintiffs' sale of the drawings to Defendants did not constitute a "publication" as defined by the Copyright Act, Plaintiffs are precluded from recovering statutory damages and attorney fees under the Copyright Act pursuant to 17 U.S.C. § 412(1). Section 412(1) of the Copyright Act precludes the award of statutory damages and attorney fees for "any infringement of copyright in an unpublished work commenced before the effective date of its registration." 17 U.S.C. § 412(1). The Sixth Circuit has held "that infringement 'commences' for the purposes of § 412 when the first act in a series of acts constituting continuing infringement occurs." *Johnson v. Jones*, 149 F.3d 494, 506 (6th Cir. 1998)(citing cases). Plaintiffs acknowledge, albeit implicitly, that pursuant to § 412(1) they are precluded from statutory damages and attorney fees for any infringement that occurred prior to September 29, 2005, the date Richard Niemi received a copyright registration for the drawings. Nonetheless, Plaintiffs argue that they should not be precluded from recovering statutory damages and attorneys fees for "separate and distinct" acts of infringement that occurred after the date of registration, citing *Cotter v. Christus Gardens, Inc.*, No. 99-5996, 2000 WL 1871698, 2000 U.S. App. LEXIS 33473

However, as cited above, Mark Niemi testified at his October 2, 2004 deposition that he met with Springfield representatives on September 28, 1998 and discussed the need to keep Plaintiffs' drawings protected. Defendants have not proffered any evidence showing that the September 28, 1998 meeting described in Mark Niemi's October 2, 2004 deposition never occurred.

(6th Cir. Dec. 12, 2000).

In *Cotter*, the Sixth Circuit held that it was proper to instruct the jury "to determine whether the activities were part of a continuing, ongoing infringement or were separate, distinct acts of infringement" when there was a four-year gap between the time of the first alleged infringement and the second alleged infringement. *See Cotter*, 2000 U.S. App. LEXIS 33473, at *8. In their response brief, Plaintiffs point to evidence showing that although any infringement of Plaintiffs' drawings to build the second GMT 360 stabilizer bender would have occurred prior to July 31, 2001, and any infringement of Plaintiffs' drawings to build the second GMT 800 stabilizer bender would have occurred prior to April 23, 2002, (AAM Dfts.' Br. at 4), the AAM Defendants also allegedly infringed their copyrighted drawings by purchasing[12] stabilizer benders from Springfield from December 16, 2005 through February 16, 2005. (*See* Pls.' Resp. at 15-16 (citing purchase orders and quotations attached as Exhibit 8).) Based on the evidence proffered by Plaintiffs, this Court finds that there is a genuine issue of material fact as to whether Defendants' alleged post-registration infringement was continuing and ongoing or was separate and distinct from Defendants' alleged pre-registration infringement. *See Cotter*, 2000 U.S. App. LEXIS 33473, at *8.

---

[12]As stated above, although Plaintiffs' direct copyright infringement claim against the AAM Defendants will be dismissed, Plaintiffs' contributory copyright infringement claim against the AAM Defendants remains. Consequently, the AAM Defendants purchase of the machines from Springfield could constitute contributory infringement. *Bridgeport Music, Inc. v. Rhyme Syndicate Music*, 376 F.3d 615, 621 (6th Cir. 2004)("Contributory infringement occurs when one, with knowledge of the infringing activity, induces, causes, or materially contributes to the infringing conduct of another.")

In conclusion, because Plaintiffs do not dispute that pursuant to 17 U.S.C. § 412(1) they cannot recover statutory damages and attorneys fees for Defendants' alleged pre-registration infringement, Defendants' motion will be granted in part. Nevertheless, to the extent that Defendants seek partial summary judgment as to whether Plaintiffs are entitled to recover statutory damages and attorneys fees under 17 U.S.C. § 412(1) for alleged post-registration infringement, Defendants' motion will be denied as there is a genuine issue of material fact whether Defendants' alleged post-registration infringement was continuing and ongoing or was separate and distinct from Defendants' alleged pre-registration infringement.

Accordingly,

**IT IS ORDERED** that Defendants' Motion for Summary Judgment as to the claims of RKN Technology, LLC is **GRANTED** for the reasons stated on the record at the December 20, 2007 hearing.

**IT IS FURTHER ORDERED** that Defendants' Motion for Partial Summary Judgment on Statute of Limitations as to Plaintiffs' claims of Copyright Infringement regarding Second GMT 360 Stabilizer Bender is **GRANTED**.

**IT IS FURTHER ORDERED** that the Defendants' Motion for Partial Summary Judgment as to Issues Barred by Collateral Estoppel is **DENIED**.

**IT IS FURTHER ORDERED** that the AAM Defendants' Motion for Summary Judgment as to Count I for Direct Copyright Infringement is **GRANTED**. Count I of Plaintiffs' First Amended Complaint is therefore **DISMISSED** as to the AAM

Defendants.

**IT IS FURTHER ORDERED** that Onyski's Motion for Summary Judgment as to Count II for Contributory Copyright Infringement is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Partial Summary Judgment Holding that Plaintiffs' Publication of the Drawings Precludes a Presumption of Validity in Copyright Registration and Prevents An Award of Statutory Damages or Attorneys Fees is **GRANTED IN PART AND DENIED IN PART**. Defendants' motion is **DENIED IN PART** for two reasons. First, to the extent that Defendants' motion is premised on the Plaintiffs' "publication" of the drawings, there is evidence in the record showing Plaintiffs' sale of the drawings to Defendants did not amount to a "general publication." Second, to the extent that Defendants' motion seeks to preclude Plaintiffs from recovering statutory damages under 17 U.S.C. § 412(1) for Defendants' alleged post-registration infringement, there is a genuine issue of material fact as to whether Defendants' alleged post-registration infringement was continuing and ongoing or separate and distinct from Defendants' alleged pre-registration infringement. Nonetheless, Defendants' motion is **GRANTED** to the extent that it seeks partial summary judgment precluding Plaintiffs from recovering statutory damages and attorneys fees for Defendants' alleged pre-registration infringement pursuant to 17 U.S.C. § 412(1).

s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

Copies to:

Robin H. Kyle, Esq.
George D. Moustakas, Esq.
Michael P. Doerr, Esq.
Christian J. Garascia, Esq.