UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICHARD K. NIEMI, and MARK NIEMI,
d/b/a RICHARD K. NIEMI DESIGN AND
ENGINEERING SERVICES, and RKN
TECHNOLOGY, L.L.C.,

      Plaintiffs,

v.

AMERICAN AXLE MANUFACTURING
& HOLDING INC., successor corporation to     Case No. 05-74210
AMERICAN AXLE &
MANUFACTURING OF MICHIGAN, a     Honorable Patrick J. Duggan
defunct corporation, AMERICAN AXLE &
MANUFACTURING, INC.,
SPRINGFIELD TOOL & DIE, INC.,
successor corporation to NEWCO OF
DUNCAN, INC., a defunct corporation, and
JAMES ONYSKI, an agent, employee of
AMERICAN AXLE &
MANUFACTURING, INC., jointly and
severally,

      Defendants.
_____/

## OPINION AND ORDER GRANTING THE AAM DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

      At a session of said Court, held in the U.S.
      District Courthouse, Eastern District
      of Michigan, on April 23, 2008.

    PRESENT:     THE HONORABLE PATRICK J. DUGGAN
                    U.S. DISTRICT COURT JUDGE

On November 2, 2005, Plaintiff[1] filed a copyright infringement action against Defendants.[2] Plaintiff's first amended complaint, which was filed on November 20, 2006, asserts a count for copyright infringement and a count for contributory copyright infringement. Presently before this Court is the AAM Defendants' "Motion for Partial Summary Judgment Under 17 U.S.C. § 504(b)." The AAM Defendants' motion has been fully briefed. Having reviewed the parties' filings, the Court sees no need for oral argument and is therefore dispensing with oral argument in accordance with Local Rule 7.1(e)(2). For the reasons set forth below, the Court will grant the AAM Defendants' motion for partial summary judgment.

## I. Relevant Factual Background

AAM manufactures automotive stabilizer bars, which are used in automobile suspension systems. AAM contracted with Springfield to build the machines used to manufacture stabilizer bars, which are known as stabilizer benders. Stabilizer benders are vehicle platform specific, and the stabilizer benders at issue in this case were built for the following vehicle platforms: the GMT 800, the GMT 360, the GMT 360 mid-cycle

---

[1]Mark Niemi, a former Plaintiff, was dismissed pursuant to the Court's February 28, 2007 Opinion and Order. (*See* Doc. No. 156.) RKN Technology, LLC, a former Plaintiff, was dismissed pursuant to the Court's March 31, 2008 Opinion and Order. (*See* Doc. No. 222.)

[2]For ease of reference the Court will refer to the following Defendants collectively as the "AAM Defendants": American Axle Manufacturing & Holding, Inc., American Axle Manufacturing, Inc., and James Onyski. When the Court collectively refers to American Axle Manufacturing & Holding Inc. and American Axle Manufacturing, Inc. it will refer to them as "AAM." Finally, the Court will refer to Defendant Springfield Tool & Die, Inc. as "Springfield."

enhancement ("GMT 360 MCE"), and the GMT 900. Springfield sub-contracted with Plaintiff for the preparation of technical drawings used to build the stabilizer benders.

Pursuant to their contract with Springfield, Plaintiff created a number of drawings for stabilizer benders from 1996 to 2000. More specifically, Plaintiff created drawings for a GMT 800 and a GMT 360 stabilizer bender. On September 29, 2005, the U.S. Copyright Office issued Plaintiff a copyright registration for the drawings, including his drawings for the GMT 800 and GMT 360 stabilizer bender. Plaintiff does not have a patent on the stabilizer benders (or any part of the stabilizer benders) depicted in the copyrighted drawings.

In this case, the alleged acts of infringement include the copying or unauthorized reproduction of Plaintiff's drawings of the GMT 800 and GMT 360 stabilizer benders. Plaintiff maintains that Defendants copied his drawings when Springfield designed and built the second GMT 800 stabilizer bender and when it designed and built the second GMT 360 stabilizer bender. In addition, Plaintiff asserts that Defendants copied his drawings when Springfield designed and built the first and second GMT 900 stabilizer benders and the first and second GMT 360 MCE stabilizer benders.

The parties have proffered experts on damages. Plaintiff's damages expert, Mr. Christopher Bakewell, opines:

> Based upon my independent analysis, including my review of the facts, data and information cited in my report, as well as my business training and experience, I am of the opinion that if the trier-of-fact determines that the copyrighted drawings at issue were infringed (or contributorily infringed) by Defendants, measures of damages would include the following:

| Measure | October 14, 1998 through December 31, 2006 | September 30, 2002 through December 31, 2006 |
|---|---|---|
| Reasonable Royalty (see Exhibits 1 and 2) | $3.15 million | $2.10 million |
| AAM's Profitability: | | |
| AAM's Cost Savings (see Exhibits 1 and 2) | $3.15 million | $2.10 million |
| AAM's Incremental Profits on Stabilizer Bar Sales (see Exhibits 1 and 3) | $18.02 million | $11.23 million |

(Pls. Resp. Ex. 2, Bakewell's Supp. Expert Rep. § 1.2[2.]. Thus, Mr. Bakewell's opinion is that Plaintiff is entitled to damages for both a reasonable royalty and AAM's profits, which includes cost savings and incremental profits. The AAM Defendants' motion seeks partial summary judgment only as to Plaintiff's claims for AAM's profits, including AAM's cost savings and incremental profits. (Doc. No. 160, AAM Dfts.' Br. at 3.)

With respect to Plaintiff's claim for profits, Mr. Bakewell states that he "understand[s] that the copyrighted drawings provided benefits to the overall process for manufacturing the stabilizer bars. Based upon the documents that I have reviewed, AAM apparently did not separately charge for the techniques enabled by the designs/copyright or place a separate value on the designs/copyright." (*Id.* ¶ 61.) Mr. Bakewell explains that his calculation of AAM's profits relates to AAM's past and projected future profits from the sale of stabilizer bars. (*See id.* ¶ 62.)

## II. Standard of Review

This Court will grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). No genuine issue of material fact exists for trial unless, by viewing the evidence in a light most favorable to the nonmoving party, a reasonable jury could return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). The moving party bears the burden of informing this Court of the basis for its motion and identifying those portions of the record that establish the absence of a material issue of fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986).

Once the moving party has met its burden, Rule 56(e)(2) requires the nonmoving party to look beyond the pleadings and designate specific facts showing that a genuine issue exists for trial. FED. R. CIV. P. 56(e)(2); *Celotex*, 477 U.S. at 322-24, 106 S. Ct. at 2552-53. It is not enough that the nonmoving party comes forward with the "mere existence of a scintilla of evidence . . . ," *Anderson*, 477 U.S. at 252, 106 S. Ct. at 2512, or some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986). Rather, the nonmoving party must present significant probative evidence in support of its opposition to the motion for summary judgment. *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993).

### III. Applicable Law and Analysis

Before describing the substance of the AAM Defendants' motion, it is worth

addressing what the AAM Defendants' motion does *not* involve.[3] Despite the fact that the parties' response and reply briefs discuss actual damages, Mr. Bakewell's calculation of actual damages in the form of a "reasonable royalty" is beyond the scope of the AAM Defendants' motion for partial summary judgment. (AAM Dfts.' Br. at 3 ("This motion does not seek summary judgment on any claim for actual damages based on alleged copying of the drawings, direct profits based on Defendant Springfield['s] alleged copying of the drawings, or statutory damages.").) Thus, this Opinion and Order is limited to the AAM Defendants' argument that they are entitled to partial summary judgment with respect to Plaintiff's claims for "indirect profits" pursuant to 17 U.S.C. § 504(b).

Under the Copyright Act, "a plaintiff may elect to recover either (1) actual damages plus the infringer's non-duplicative profits, or (2) statutory damages." *Rainey v. Wayne State Univ.*, 26 F. Supp. 2d 963, 970 (E.D. Mich. 1998)(citing 17 U.S.C. § 504). In their motion, AAM Defendants rely on 17 U.S.C. § 504(b), which provides:

> **(b) Actual Damages and Profits.**—The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages. In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the

---

[3]In a separate Opinion and Order issued on March 31, 2008, this Court granted AAM Defendants' motion for summary judgment as to Count I of Plaintiff's first amended complaint, which asserts a claim for direct copyright infringement. Therefore, the only claim remaining against AAM Defendants is Plaintiff's claim for contributory copyright infringement.

>   elements of profit attributable to factors other than the
>   copyrighted work.

17 U.S.C. § 504(b). The AAM Defendants' present motion deals only with Plaintiff's claim for the "profits of the infringer that are attributable to the infringement." *Id.*

Any damages in the form of profits Plaintiff is seeking from the AAM Defendants' alleged infringement are indirect profits, because if Plaintiff can prove that the AAM Defendants are contributorily liable for infringing his copyright in the drawings, AAM's profits were not incurred from the sale of the infringing work. *See Mackie v. Rieser*, 296 F.3d 909, 914 (9th Cir. 2002)(stating that "direct profits" are "those that are generated by selling an infringing product," whereas "indirect profits" consist of "revenue that has a more attenuated nexus to the infringement"). According to the AAM Defendants, the evidence Plaintiff proffers to prove indirect profits is too attenuated to create a genuine issue of material fact whether the profits associated with AAM's sale of stabilizer bars to the General Motors Corporation ("GM") can be attributed to the infringement.

Plaintiff argues that he has offered evidence from which a reasonable jury could infer that the AAM Defendants' profits from the sale of stabilizer bars to GM are "attributable to the infringement." Therefore, according to Plaintiff, because he has established a causal connection between AAM's profits and the alleged infringement, the burden shifts to the AAM Defendants to apportion their profits. *See* 17 U.S.C. § 504(b).

In *Andreas v. Volkswagen of America*, 336 F.3d 789 (8th Cir. 2003), the Eighth Circuit explained the burden-shifting framework of § 504(b) as it applies to both direct and indirect profits cases:

> Although cases distinguish between direct and indirect profits, the statute does not. We agree that in an indirect profits case the profits "attributable" to the infringement are more difficult to quantify. But that difficulty does not change the burden of proof established by the statute. The burden of establishing that profits are attributable to the infringed work often gets confused with the burden of apportioning profits between various factors contributing to the profits. "The plaintiff has the 'burden' to demonstrate a nexus between the infringement and the indirect profits before apportionment can occur." The nexus requirement exists in both direct and indirect profits cases. Once that nexus is established in either a direct or indirect profits case, if "an infringer's profits are attributable to factors in addition to use of plaintiff's work, an apportionment of profits is proper. The burden of proving apportionment (i.e., the contribution to profits of elements other than the infringed property), is the defendant's."

*Id.* at 796 (citations omitted). Thus, this Court must first determine whether the evidence proffered by Plaintiff is sufficient to create a genuine issue of fact with respect to the nexus between the alleged infringement and AAM's profits.

Where, as here, the claimed profits are indirect, courts have placed a heightened initial burden on the copyright owner. *DaimlerChrysler Servs. v. Summit Nat'l*, No. 02-71871, 2006 WL 208787, 2006 U.S. Dist. LEXIS 4282, at *11-12 (E.D. Mich. Jan. 26, 2006). In other words, "to survive summary judgment on a demand for indirect profits pursuant to § 504(b), a copyright holder must proffer sufficient non-speculative evidence to support a causal relationship between the infringement and the profits generated indirectly from such an infringement." *Mackie*, 296 F.3d at 915-16. Moreover, although a literal reading of § 504(b) would seem to require a plaintiff seeking profits damages "'to present proof only of the infringer's gross revenue,' 17 U.S.C. § 504(b), . . . the term 'gross revenue' under the statute means gross revenue reasonably related to the

infringement, not unrelated revenues." *Davis v. Gap, Inc.*, 246 F.3d 152, 160 (2d Cir. 2001).

The underlying premise of Mr. Bakewell's calculation for AAM's is best described in the following statement: "[t]o the extent that a royalty and cost savings approach does not capture all of AAM's benefits attained from the alleged infringement, any additional benefits would be reflected in AAM's profits from sales of alleged infringing stabilizer bars." (Pls.' Resp. Br. Ex. 3, Bakewell Sec. Supp. Rep. ¶ 64.) Mr. Bakewell's characterization of the stabilizer bars manufactured by AAM as the "infringing" work is incorrect. The infringing works at issue in this case are the copies of Plaintiff's drawings, not the stabilizer bars that were built from the stabilizer benders depicted in Plaintiff's drawings. As this Court has previously held, the "use" of the allegedly copied drawings to build stabilizer benders does not infringe Plaintiff's copyright in the drawings. (*See* Doc. No. 83, 7/24/06 Op. & Or. at 6 (stating that "the manufacture of a machine from a copyrighted technical drawing is clearly not copyright infringement").[4]

---

[4]Notwithstanding this Court's previous holding "that Plaintiff['s] copyrights are not infringed by the use, use of copies, or use of derivatives of copies, to manufacture or use stabilizer benders," (7/24/06 Op. & Or. at 8), Plaintiff continues to argue that "Defendants use of the copyrighted drawings is" copyright infringement. (Pls.' Resp. Br. at 3 n.1.) In so arguing, Plaintiff relies on *Automation by Design v. Raybestos Prods. Co.*, 463 F.3d 749 (7th Cir. 2006). Plaintiff's reliance on *Automation by Design* is misplaced, and if anything, it supports this Court's previous determination that "use" of Plaintiff's copyrighted drawings to manufacture stabilizer benders does not constitute copyright infringement. The issue in *Raybestos* was whether the defendant breached a contract which allowed the defendant to use and duplicate the plaintiff's copyrighted technical drawings of an automated clutch plate assembly machine. Because the contract in *Raybestos* granted the defendant a license to reproduce the technical drawings, the reproduction of the technical drawings outside the terms of the contractual license constituted copyright infringement. Moreover, the contract in *Raybestos* stated

9

Moreover, in this Court's opinion, Mr. Bakewell is attempting to expand the protection afforded by Plaintiff's copyright beyond that which is protected under the Copyright Act. In his reports, Mr. Bakewell repeatedly references the "process[es]" and "technique[s]" employed by the stabilizer benders depicted in Plaintiff's copyrighted drawings. (*See* Bakewell Supp. Rep. ¶ 61.) The Copyright Act, however, does not protect any "process" or "technique" depicted in the copyrighted technical drawings.[5] *See* 17 U.S.C. § 102 ("In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work.")

Because Mr. Bakewell's calculation of AAM's profits rests on the faulty premise that the infringing works are the stabilizer bars, and because Mr. Bakewell's profits calculation is based on characteristics of the drawings that are not protected by the Copyright Act, this Court does not believe Mr. Bakewell's report is sufficient to raise a

---

specifically that "[the plaintiff] grants [the defendant] the right to duplicate any or all design copyrighted by [plaintiff]." *Id.* at 754. Plaintiff reads *Raybestos* too broadly. Contrary to Plaintiff's contention, *Raybestos* did not hold that duplicating a machine depicted in copyrighted drawings constitutes copyright infringement. Therefore, Plaintiff's reliance on *Raybestos* is unpersuasive.

[5]Any "process" or "technique" depicted in Plaintiff's drawings of stabilizer benders could have or could be protected under the Patent Act. *See* 35 U.S.C. § 101 ("Whoever invests or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title.") However, as stated above, Plaintiff does not have a patent on the stabilizer benders depicted in the technical drawings.

jury question as to whether AAM's profits from the sale of the stabilizer bars are "attributable to the [copyright] infringement." *Id.* § 504(b).

Even if Mr. Bakewell's report was not based on the faulty premise described above, the evidence Mr. Bakewell relies on to calculate AAM's profits is also insufficient to create a jury question as to whether AAM's profits are "attributable to the [copyright] infringement." *Id.* In his Second Supplemental Expert Report, Mr. Bakewell states that "there is substantial evidence linking AAM's and Springfield's profits to contributory infringement." (Bakewell Sec. Supp. Rep. at 33.) Mr. Bakewell goes on to describe the evidence he believes establishes a causal relationship:

- An AAM internal memorandum which stated that "The GMT 820 Bender is the first and only bender to incorporate forming and piercing of the eyelet in a single machine. No other [v]endor or [c]ompetitor has the process capability or knowledge."

- Minutes of AAM's meetings in January 1999, which indicated that AAM's Detroit Forge was, on average, "uncompetitive on the jobs . . . not awarded by 18%." This shows that any cost savings, would have been attractive to AAM.

- Evidence demonstrated that AAM's relations with GM on the stabilizer bar front were strained to the point where GM wrote to AAM advising AAM of GM's decision to discontinue any further design or tooling for a front stabilizer bar.

- I have seen no contemporaneous evidence indicating that either Springfield or AAM made any efforts to develop independent non-infringing drawings.

(*Id.* (referring to several documents contained in Ex. D to the AAM Dfts.' Mot.)(filed under seal).) It is clear to this Court that the majority of the evidence relied on by Mr.

Bakewell to support his opinion that AAM's profits are attributable to the copyright infringement relates (1) to the use of the copyrighted drawings, which this Court has held does not constitute copyright infringement; or (2) to the techniques or processes depicted in the drawings, which are not protected by the Copyright Act. As described above, such evidence is insufficient to create a jury question as to whether AAM's profits from the sale of the stabilizer bars are "attributable to the [copyright] infringement." *Id.* § 504(b)

This Court also believes that Plaintiff's reliance on the Eighth Circuit's decision in *Andreas* unpersuasive. The work at issue in *Andreas* was a phrase taken from one of the plaintiff's copyrighted artworks. *Andreas*, 336 F.3d at 791-92. The defendant in *Andreas* infringed the plaintiff's copyright when it "included a phrase from the plaintiff's copyrighted work in a television commercial that it created for the introduction of the Audi TT coupe." *Id.* at 791. In *Andreas*, the plaintiff offered evidence showing that "Audi enthusiastically presented the commercial to its dealers as an important and integral part of its launch of the TT coupe; sales of the TT coupe during the period that the commercial aired were above Audi's projections; the three commercials received high ratings on the Allison-Fischer surveys that rated consumer recall of the commercials; and Audi paid M&S a substantial bonus based on the success of the commercials." *Id.* at 797. The Eighth Circuit held that this evidence was sufficient to establish "a nexus between the infringement and Audi's sale of the TT coupe." *Id.* at 798.

The difference between facts in the case at bar and those in *Andreas* is significant. Here, the copyrighted drawings depict stabilizer benders. The stabilizer benders depicted in the copyrighted drawings simplified the stabilizer bar machining process. (Pls.' Resp.

Ex. 2, Bakewell Supp. Rep. ¶¶ 21-22 (filed under seal).) Unlike the copyrighted work in *Andreas*, the copyrighted works in this case are drawings of machines, which, if built from the drawings, are themselves valuable to the stabilizer bar machining process. Therefore, this Court believes *Andreas* is factually distinguishable from this case.

**IV. Conclusion**

Based on the foregoing, the Court concludes that Plaintiff has failed to present evidence from which a reasonable jury could conclude that AAM's profits from the sale of the stabilizer bars are attributable to the infringement of Plaintiff's copyright in the technical drawings.

Accordingly,

**IT IS ORDERED** that the AAM Defendants' Motion for Partial Summary Judgment Under 17 U.S.C. § 504(b) is **GRANTED**.

s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

Copies to:
Robin H. Kyle, Esq.
John C. Dougherty, Esq.
George D. Moustakas, Esq.
Christian J. Garascia, Esq.